DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**QBE SPECIALTY INSURANCE COMPANY,**
Appellant,

v.

**UNITED RECONSTRUCTION GROUP, INC.,** a/a/o **FALLON JALLALI,**
Appellee.

No. 4D21-472

[July 21, 2021]

Appeal from the County Court for the Seventeenth Judicial Circuit, Broward County; Mardi Levey Cohen, Judge; L.T. Case Nos. COCE16-015010 (50) and CACE19-006811 (AP).

Robert T. Vorhoff, Joseph Gelli and Brian A. Oltchick of Garrison, Yount, Forte & Mulcahy, L.L.C., Tampa, for appellant.

Earl I. Higgs, Jr. of Higgs Law, P.A., Orlando, for appellee.

DAMOORGIAN, J.

QBE Specialty Insurance Company ("QBE") appeals the county court's entry of final summary judgment in favor of United Reconstruction Group, Inc. ("United"). The court entered judgment in United's favor on the basis that QBE breached the policy's "Loss Payment" provision by failing to remit the insurance proceeds to United, the assignee under an assignment of benefits agreement purportedly executed by the insured, Fallon Jallali ("the insured"). On appeal, QBE argues the court erred in entering final summary judgment in United's favor because genuine issues of material fact remain as to whether the insured executed, or caused to be executed, the assignment. We agree with QBE and reverse.

The relevant facts in this case, as gleaned from the record, are as follows. The insured owns a home insured by QBE. While the subject policy was in effect, the insured's home sustained water damage. That same day, United was hired to perform emergency water mitigation services on the home. In exchange for its services, United had executed a "Contract for Services, Assignment of Benefits, Direct Payment Authorization, and Hold Harmless Agreement" ("AOB agreement").

The AOB agreement's terms were as follows:

> I hereby assign all rights and benefits in relation to such Services to [United] completely and without reservation. I authorize and instruct all insurance company(ies) that may be contractually obligated to provide benefits and/or payments to me for such Services to pay [United] directly as sole payee. I authorize and instruct any payments issued by the insurance company for the Services to be sent to [United] directly. In the event [United] does not receive payment in full for its Services, I hereby assign any and all causes of action, including compromising, litigating, settling or otherwise resolve said claim exclusively as [United] sees fit in its sole discretion. I understand, agree, and waive any right or claim of interest that I may possess to interfere with [United's] exclusive discretion in this regard. I understand that whatever amount [United] is unable to collect from the insurance is ultimately my responsibility.

The AOB agreement included a "Customer Print Name" line and a "Customer Signature" line. The "Customer Print Name" line was left blank, but the "Customer Signature" line included a signature.

Upon completing the work, United sent QBE a copy of the AOB agreement along with its invoice in the amount of $10,897.91. After receiving both documents, QBE's claims adjuster contacted United directly to negotiate the invoice amount. Based on those discussions, United agreed to reduce the invoice amount to $8,603.20. QBE thereafter sent a check for the negotiated amount to the insured, who promptly endorsed and cashed the check.

United thereafter sued QBE for breach of contract, arguing that by remitting the insurance proceeds to the insured rather than to United, QBE breached the policy's "Loss Payment" provision. That provision states, in relevant part, that QBE will pay the insured "unless some other person is named in the policy *or is legally entitled to receive payment.*" (emphasis added). As the assignee under the written AOB agreement, United maintained it was the only entity legally entitled to receive payment. Alternatively, United argued it was entitled to receive payment because it had "an assignment in equity based upon the services it performed at the insured's property." QBE answered the complaint and raised as an affirmative defense that the AOB agreement was invalid because it was not signed by the insured. QBE later insinuated that the insured's father, who is not a named insured under the policy, signed the document.

2

United ultimately moved for summary judgment. In support of its motion, United filed the affidavit of Lagos Nagy, one of its owners. In relevant part, Mr. Nagy attested that United was hired to perform water mitigation services and that "the insured executed, or caused to be executed, the assignment of benefits under the policy to United for the services it performed. Instead of collecting an upfront payment from the insured, United accepted the AOB and direct payment authorization to perform services at the property." United also filed the deposition transcript of QBE's corporate representative. In relevant part, the corporate representative confirmed that, prior to issuing the check, QBE received a copy of the AOB agreement and United's invoice; QBE's claims adjuster contacted United directly and negotiated the invoice amount; and QBE paid the negotiated amount to the insured.

QBE filed a response in opposition to United's motion for summary judgment, arguing that the written AOB agreement was invalid because it was not signed by the insured. As such, QBE could not have breached the loss payment provision because United was not legally entitled to receive payment. In support of its position that the signature appearing on the AOB agreement did not belong to the insured, QBE presented the affidavit of a forensic document examiner. In relevant part, the forensic document examiner attested that he compared the signature on the AOB agreement to seven known/standard signatures of the insured taken from various documents. After comparing the signatures, the forensic document examiner concluded the signature on the AOB agreement "does not compare favorably with the individual characteristics present in the standard signatures and, in fact, displays total departure and fundamental dissimilarity to the standard signatures in all areas." Aside from unsuccessfully attempting to strike the forensic document examiner's affidavit, United did not reply to QBE's response in opposition to the motion for summary judgment.

During the ensuing summary judgment hearing, the court correctly recognized the forensic document examiner's affidavit created an issue of fact as to whether the signature on the AOB agreement belonged to the insured. Nonetheless, the court inexplicably granted United's motion for summary judgment, concluding that "a valid assignment between the insured and [United] existed." The court did not specifically address the invalid signature issue or clarify whether United had a valid legal or equitable assignment of benefits. This appeal follows.

"The standard of review for an order granting summary judgment is de novo." *State Farm Fla. Ins. Co. v. Lime Bay Condo., Inc.*, 187 So. 3d 932,

3

934 (Fla. 4th DCA 2016). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fla. R. Civ. P. 1.510(a). "A summary judgment should not be granted where there are issues of fact raised by affirmative defense which have not been effectively factually challenged and refuted." *Cufferi v. Royal Palm Dev. Co.*, 516 So. 2d 983, 984 (Fla. 4th DCA 1987). "The burden is on the plaintiff, as the moving party, to demonstrate that the defendant could not prevail." *Id.*

"Under Florida law, an insured may assign his right to benefits under a contract of insurance." *Schuster v. Blue Cross & Blue Shield of Fla., Inc.*, 843 So. 2d 909, 911 (Fla. 4th DCA 2003). Once the assignment is executed, "[t]he assignee stands in the shoes of the assignor and is able to maintain suit in its own name as the real party in interest." *United Water Restoration Grp., Inc. v. State Farm Fla. Ins. Co.*, 173 So. 3d 1025, 1027–28 (Fla. 1st DCA 2015) (holding that because the insured assigned her right to benefits under the policy to the water restoration company, the company was permitted to sue the insurer and pursue the assigned benefits). Ultimately, "the intent of the parties determines the existence of an assignment." *Citizens Prop. Ins. Corp. v. Ifergane*, 114 So. 3d 190, 195 (Fla. 3d DCA 2012). In other words, a third-party's ability to bring suit against an insurance company is predicated on it having received a valid assignment of benefits from the insured.

In the instant case, QBE raised as an affirmative defense that the written AOB agreement was invalid because it was not signed by the insured. It was therefore incumbent on United, the plaintiff and moving party, to either disprove that defense or establish the legal insufficiency of the defense. To do so, United presented the affidavit of Mr. Nagy who generally averred that United was hired to perform mitigation services and that, "[a]s part of the contract, the insured executed, or caused to be executed, the assignment of benefits under the policy to United for the services it performed." To the extent this affidavit sufficiently disproved QBE's affirmative defense, which is questionable, QBE then came forward with the affidavit of its forensic document examiner demonstrating that the signature appearing on the written AOB agreement was inconsistent with the insured's known signature. As recognized by the county court, this otherwise unrebutted evidence undoubtedly raised an issue of fact as to whether the insured executed, or caused to be executed, the written AOB agreement. Thus, insofar as the county court seemingly found that United had a valid written assignment, this was error. *See E. Qualcom Corp. v. Glob. Com. Ctr. Ass'n*, 59 So. 3d 347, 351 (Fla. 4th DCA 2011) ("If the affidavits and other evidence raise any doubt as to any issue of material fact then a summary judgment may not be entered.").

4

To the extent the county court may have found United had an equitable assignment, this too was error. *See SourceTrack, LLC v. Ariba, Inc.*, 958 So. 2d 523, 526 (Fla. 2d DCA 2007) ("A court may find an equitable assignment where necessary to effectuate the parties' plain intent or to avoid injustice."). Without resolving the underlying factual issue of who executed, or caused to be executed, the written AOB agreement, it cannot conclusively be said that the insured intended to assign her right to payment under the policy to United. The mere fact that United performed work on the home does not give rise to an equitable assignment absent evidence the insured intended to assign her rights. *See generally McClure v. Century Ests., Inc.*, 120 So. 4, 9 (Fla. 1928) ("Any words or transactions which show an intention on the one side to assign, and an intention on the other to receive, if there is a valuable consideration, will operate as an effective equitable assignment." (citation omitted)).

Accordingly, we reverse and remand for further proceedings consistent with this opinion.[1]

*Reversed and remanded.*

GROSS and MAY, JJ., concur.

*      *      *

**Not final until disposition of timely filed motion for rehearing.**

---

[1] We reject without further comment United's arguments that QBE did not have standing to challenge the validity of the written AOB agreement or that the county court could not consider the forensic document examiner's affidavit.